IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CIARA GRAHAM, *individually and on behalf of all similarly situation persons*,

    Plaintiff,

v.

CAPITAL ON DEMAND INC.,
MARCUS TENNEY, and
REUNEKIEA WILLIAMS,

    Defendants.

CIVIL ACTION NO.
1:22-cv-1732-AT

## ORDER

Before the Court is Plaintiff Ciara Graham's Motion for Default Judgment against Defendants Capital on Demand Inc., Marcus Tenney, and Reunekiea Williams. [Doc. 66]. As discussed below, Plaintiff's Motion is **GRANTED**.

### I. Procedural History

Plaintiff Ciara Graham worked as a private loan associate at Defendant Capital on Demand for about 28 weeks between September 2021 and March 2022. (Compl., Doc. 1 ¶¶ 18, 27, 43).[1] In that role, Plaintiff managed client loan files from

---

[1] Defendants Marcus Tenney and Reunekiea Williams own and operate Capital on Demand and exercise day-to-day control over the operations and pay practices of the company. (Compl., Doc. 1 ¶¶ 14, 15).

onboarding to closing, reviewed loan documents to ensure their accuracy and completeness under Capital on Demand policies, obtained and analyzed loan applicants' financial information, and approved loans within company-defined limits. *See* (Compl., Doc. 1 ¶ 19); (Plaintiff's Employment Contract, Exhibit A to Doc. 77-1 at 2).

Plaintiff's employment contract provided that she would be paid by commission every two weeks. (Plaintiff's Employment Contract, Exhibit A to Doc. 77-1 at 2–3). The commissions consisted of flat fees for each funded loan that Plaintiff processed, which would vary based on the value of each loan. *See* (*id.*). Plaintiff alleges that during her 28 weeks with Capital on Demand, she worked 55 to 60 hours per week and received $4,000 in total compensation. (*Id.* ¶¶ 27, 40, 43).

In May 2022, Plaintiff filed this Fair Labor Standards Act ("FLSA") collective action on behalf of herself and other similarly situated private loan associates at Capital on Demand.[2] (Compl., Doc. 1). The Complaint alleges that Defendants improperly labeled Plaintiff an independent contractor and willfully failed to pay her the federal minimum wage and overtime wages, in violation of 29 U.S.C. §§ 206, 207. *See* (*id.* ¶¶ 1, 20, 57–79).

---

[2] One other Capital on Demand employee opted in to this lawsuit, but she was voluntarily dismissed in February 2023. *See* (Opt-In Plaintiff Kimberly Love's Stipulation of Dismissal, Doc. 35). Ciara Graham is the only remaining plaintiff in this lawsuit.

All Defendants defaulted, and Plaintiff moved for default judgment. [Doc. 66]. On October 30, 2024, the Court held a hearing on the Motion for Default Judgment, during which Plaintiff and Defendants Tenney and Williams testified. (Doc. 53). In support of her motion, Plaintiff also provided a declaration and documentation supporting her requested damages, as well as declarations and time records supporting the requested attorney's fees. (Doc. 77).

## II. Legal Standard

A default under Federal Rule of Civil Procedure 55(a) constitutes the admission of all well-pleaded factual allegations contained in the complaint and "severely limits the defendant's ability to defend the action." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). But a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec.*, 218 F. App'x at 863.

It is proper to enter a default judgment under Rule 55(b)(2) if the well-pleaded allegations in the complaint state a substantive cause of action and if there is a sufficient basis in the pleadings for the judgment entered. *Id.*; *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005); *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011); *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206. The legal standard on a motion for entry of default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrance Found.*, 789 F.3d 1239, 1245

(11th Cir. 2015) (internal citation omitted). A motion for default judgment is therefore "like a reverse motion to dismiss for failure to state a claim." *Id.* (citation omitted).

"In cases involving default judgment, '[w]hile well-pleaded facts in the Complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.'" *Miata v. Bottoms Up Rest. Grp., LLC*, 2021 WL 9721151, at *2 (N.D. Ga. Apr. 29, 2021) (citation omitted); *Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007). "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they are from." *Miata*, 2021 WL 9721151, at *2.

In addition to the pleadings, a court considering a motion for default judgment may also rely on evidence such as affidavits and declarations. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011). Although an "evidentiary hearing is not a per se requirement" for awarding damages by default judgment, *SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005), the Court conducted an evidentiary hearing on October 30, 2024, (Doc. 78).

### III. Discussion

#### A. Statutory Background

The FLSA was enacted to protect the health, efficiency, and welfare of workers in the United States. It requires covered employers to pay employees a

4

minimum hourly wage of $7.25 during each pay period and to pay employees who work more than 40 hours per week overtime pay at a rate of at least one and one-half times an employee's regular pay rate.[3] *See* 29 U.S.C. §§ 206(a), 207(a)(1); *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017); *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1578–79 (11th Cir.), *modified*, 776 F.2d 265 (11th Cir. 1985). Defendants have stipulated that the FLSA applies to Capital on Demand under enterprise coverage. *See* (Stipulation Regarding FLSA Coverage, Doc. 41 ¶ 1); *see also Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (stating that "either individual coverage or enterprise coverage can trigger the [FLSA's] applicability").

An employer's decision to pay an employee by commission does not alleviate its responsibility to pay an employee the federal minimum wage for every hour worked during each pay period. *See Olson*, 765 F.2d at 1575, 1578. Although certain circumstances may exempt an employer from paying a commissioned worker overtime wages under the FLSA, *see Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1256 (11th Cir. 2001) (citing 29 U.S.C. § 207(i)), the general rule is that the application of an FLSA exemption "is a matter of affirmative defense on which the employer has the burden of proof," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974); *Sims v. UNATION, LLC*, 292 F. Supp. 3d 1286, 1294 (M.D. Fla.

---

[3] An employee's "regular rate" is the hourly rate that they were actually paid during a normal pay period, excluding any overtime payments. *See Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017).

2018). Employers must establish that an FLSA exception applies to an employee by a preponderance of the evidence. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. \_\_, 2025 WL 96207, at \*4 (2025). Here, by defaulting, Defendants forfeited the opportunity to rase an FLSA exception as an affirmative defense to Plaintiff's overtime wage claim.

### B.  Employee vs. Independent Contractor

The Complaint alleges that Defendants improperly labeled Plaintiff and other private loan associates "independent contractors" to try to avoid paying them the federal minimum wage and overtime wages under the FLSA. (Doc. 1 ¶¶ 1, 20).

Under the FLSA, "[e]mployees are entitled to be paid a minimum wage and overtime wages; independent contractors are not." *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1368 (N.D. Ga. 2019). Since "[t]he determination of whether a worker is an employee or an independent contractor is a question of law for the court," it cannot be admitted by default. *See id.*

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'"

*Scantland*, 721 F.3d at 1311 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)). Six nonexclusive factors guide this inquiry:

1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

4) whether the service rendered requires a special skill;

5) the degree of permanency and duration of the working relationship;

6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312. Although "these factors serve as guides, the overarching focus of the inquiry is economic dependence." *Id.* The Court "focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id.* (citation omitted).

Here, the well-pled allegations in the Complaint and record evidence adequately establish that Plaintiff was an employee of Capital on Demand rather than an independent contractor who was in business for herself. *See id.*

To start, Plaintiff's term of employment with Capital on Demand had no set end date. (Pl. Employment Contract, Exhibit A to Doc. 77-1 at 2). And during her tenure, the company exercised a significant degree of control over how Plaintiff performed her work—including dictating Plaintiff's hours, subjecting her to weekly

file assessments, and imposing mandatory standards for how Plaintiff handled loan transactions, maintained files, and reported absences. *See* (Compl., Doc. 1 ¶¶ 29, 33–37).

Further, Plaintiff's profit opportunities were based exclusively on work assigned and approved by Capital on Demand. *See Amponsah v. DirecTV, LLC*, 278 F. Supp. 3d 1352, 1361 (N.D. Ga. 2017). The company unilaterally provided Plaintiff her loan transaction assignments and prohibited her from "engag[ing] in any other employment" during her tenure. (Pl. Employment Contract, Exhibit A to Doc. 77-1 at 3); *see* (Compl., Doc. 1 ¶¶ 23, 32). Plaintiff was also required to have the company preapprove any transactions "involving other brokerage firms or unapproved providers," and her contract stated that any loan transaction made during her employment was "property of [Capital on Demand]." (Pl. Employment Contract, Exhibit A to Doc. 77-1 at 3).

Moreover, Plaintiff had no previous experience with loan transactions and was required to undergo mandatary unpaid company training. Plaintiff also performed her work using software, applications, and phone and email accounts provided by the company. *See* (Compl., Doc. 1 ¶¶ 30, 31, 39); (Onboarding Email, Doc. 79-6 at 322). Finally, the Complaint and record evidence reflect that Plaintiff and the other private loan associates were central to the operation of Capital on Demand's business.

For these reasons, the Court concludes that economic reality of Plaintiff's employment relationship with Capital on Demand shows that she was an employee

8

under the FLSA. *See Amponsah*, 278 F. Supp. 3d at 1360–62. Defendants were thus required to comply with the FLSA's minimum wage and overtime provisions during her time as a covered employee.

### C. Liability Determination

The Court now turns to whether Defendants complied with their FLSA obligations during Plaintiff's employment. Based on the Complaint's well-pleaded allegations, the Court concludes that Defendants violated the FLSA by failing to pay Plaintiff the full minimum wage rate of $7.25 an hour and the time-and-a-half overtime wage during the weeks that Plaintiff worked more than 40 hours. *See* 29 U.S.C. §§ 206(a), 207(a)(1).

During Plaintiff's 28 weeks of employment with Capital on Demand, she worked 55 to 60 hours per week but only received $4,000 in total pay. *See* (Compl., Doc. 1 ¶¶ 27, 40, 43); (Graham Decl., Doc. 77-1 ¶¶ 3–6). Had Plaintiff been properly paid under the FLSA's minimum wage and overtime provisions, she would have received at least $12,689.60 for her work.[4] Thus, the Complaint and the submitted declarations provide adequate bases to find that Defendants violated the relevant minimum wage and overtime provisions of the FLSA.

### D. Damages

An employer who violates the minimum wage or overtime wage provisions of the FLSA "shall be liable to the employee or employees affected in the amount

---

[4] The math is as follows: (28 weeks x 40 hours) ($7.25) + (28 weeks x 15 hours) ($10.88) = $12,689.60.

of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[L]iquidated damages are mandatory absent a showing of good faith" by an employer that it had reasonable grounds for believing that its act or omission did not violate the FLSA. *See Spires v. Ben Hill County*, 980 F. 2d 683, 689 (11th Cir. 1993).

Here, Plaintiff seeks $54,687.50 in lost wages. She argues that because her employment contract stated that her annual "targeted variable compensation" was $65,000, her regular hourly rate was $31.25. *See* [Doc. 66 at 7 & n.1] ("This is calculated by dividing $65,000 by 52 weeks and then dividing that number by 40 hours/week."). Unfortunately, this is not a correct damages calculation.

Plaintiff was paid by commission and did not earn an annual salary. Although her contract may have stated that her "targeted" annual compensation was $65,000, it did not guarantee—or create a contractual right—to that amount. Besides, Plaintiff is not pursuing a breach-of-contact claim.

In this FLSA action, Plaintiff is entitled to recover her unpaid minimum wages, including overtime. To determine Plaintiff's regular hourly rate during her employment with Capital on Demand, the Court looks to what she was paid during a normal pay period. *See Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). The $4,000 that Plaintiff received in total Compensation appears to have been paid out in three installments: $500 on February 10, 2022; $1,000 on March 17, 2022, and $2,500 on some date after Plaintiff was terminated. *See* (Graham Decl., Doc. 77-1 ¶ 5, 6); (Pl. Bank Statement, Exhibit B to Doc. 77-1 at 1). Because

it is apparent from this record of sporadic payments that Plaintiff was paid less than the federal minimum hourly wage during her time at Capital on Demand, her regular hourly rate for the purposes of damages calculations must be set at the statutory minimum of $7.25 an hour. Her overtime rate of pay would therefore be $10.88 (the product of $7.25 x 1.5).

Next, the Complaint's well-pled allegations, Plaintiff's hearing testimony, and the record evidence support the reasonable conclusion that Plaintiff worked approximately 55–60 hours per week at Capital on Demand for approximately 28 weeks. *See* (Compl., Doc. 1 ¶¶ 27, 40, 43); (Graham Decl., Doc. 77-1 ¶ 3).[5] Taking a conservative approach to its calculations, Court therefore awards Plaintiff $8,689.60 in lost wages.[6] And because Defendants have not made a showing of good faith, Plaintiff is also entitled to liquidated damages. *See Spires*, 980 F. 2d at 689. Plaintiff is thus awarded **$17,379.20** in total compensatory damages.

---

[5] Although, at the damages hearing, Defendants Tenney and Williams disputed Plaintiff's claim that she worked 55–60 hours a week, they conceded that Capital on Demand did not keep a record of the hours that Plaintiff worked, as required by the FLSA. In light of the facts deemed admitted by Defendants' default, and Defendants' failure to present "evidence of the *precise* amount of work [Plaintiff] performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence," the Court approximates that Plaintiff worked 55 hours per week. *See Medrano v. The Inv. Emporium LLC*, 672 F. App'x 944, 947–48 (11th Cir. 2016) (emphasis added); *Klim v. DS Servs. of Am., Inc.*, 225 F. Supp. 3d 1373, 1377 n.2 (N.D. Ga. 2015). Defendants' belated reliance on inconclusive and cryptic activity logs from one of Capital on Demand's computer systems is simply insufficient to disturb this conclusion. *See* (Doc. 83).

[6] The math is as follows: (28 weeks x 40 hours) ($7.25) + (28 weeks x 15 hours) ($10.88) = $12,689.60. When the $4,000 that Plaintiff was paid is subtracted, Plaintiff is entitled to $8,689.60 in lost wages.

**IV.     Attorney's Fees**

"Prevailing FLSA plaintiffs are 'automatically entitled to attorneys' fees and costs.'" *P&k Rest. Enterprise, LLC v. Jackson*, 758 F. App'x. 844, 847 (11th Cir. 2019) (citing *Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 n. 12 (11th Cir. 2007)). When a violation of the FLSA is shown, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citation omitted) ("The language of the statute contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'").

Here, Plaintiff seek $39,555 in attorney's fees: $17,235 for the services of attorney J. Stephen Mixon and $22,320 for the services of attorney Jackie R. Lee. [Doc. 66 at 7]; (Lee Decl., Doc. 77-2 ¶ 6); (Mixon Decl., Doc. 77-3 ¶ 6).

**A.     Legal Framework**

The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge after proper application of a lodestar fee analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Natco, Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001). "A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable." *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

Plaintiffs, as the party seeking an award of fees, bear the burden of demonstrating the reasonableness of the hours worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). That burden includes:

> supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

There is no precise rule or formula a court must follow in determining what is a reasonable fee award. The court may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. But a court may not both engage in an hour-by-hour analysis and impose an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008) ("[T]he district court is to apply either method, not both.").

### B. Analysis

#### 1. Reasonable Hourly Rate

The Court's first task under the lodestar method is to determine a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. Generally, "the relevant

13

legal community" is the "place where the case is filed." *See Cullens v. Ga. Dept't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

Plaintiffs claim a rate of $450 per hour for attorney John Mixon and $400 per hour for attorney Jackie Lee. *See* (Lee Decl., Doc. 77-2 ¶ 5); (Mixon Decl., Doc. 77-3 ¶ 5). Both are experienced employment litigation attorneys who harness their decades of experience to operate their own law firms.

Based on the submitted evidence and the Court's experience with this District's legal markets, the Court finds that $450 and $400 are reasonable hourly rates for attorneys of Mr. Mixon's and Ms. Lee's skill and experience. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1303) ("A court . . . 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'").

### 2.     Reasonable Number of Compensable Hours

The second step of the lodestar calculation is "the ascertainment of reasonable hours" worked. *Norman*, 836 F.2d at 1301. In submitting the number of hours worked, applicants must exercise "billing judgment" and exclude "excessive, redundant or otherwise unnecessary hours." *Id.* (citing *Hensley*, 461 U.S. at 434). This means that "a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301. For example, "a fee applicant is not entitled to compensation at an attorney's rate simply because an

attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Id.* at 1306.

Mr. Mixon and Ms. Lee have submitted detailed billing reports that reflect the hours worked on specific tasks for this matter. *See* (Lee Billing Report, Exhibit A to Doc. 77-2); (Mixon Billing Report, Exhibit A to Doc. 77-3). Mr. Mixon requests compensation for 38.3 hours of billable work and Ms. Lee for 55.8 hours of billable work. (Lee Decl., Doc. 77-2 ¶ 5); (Mixon Decl., Doc. 77-3 ¶ 5). Upon reviewing Mr. Mixon's and Ms. Lee's Billing Report, the Court finds that a 10% reduction to their hours is appropriate to account for the inclusion of some administrative and duplicative tasks. *See Spurlock*, 540 F. Supp. 3d at 1214–15 (making a 10% across-the-board reduction to compensable hours to account for the inclusion of certain administrative tasks and redundancies in drafting of documents such as the Complaint). This results in the following fee calculations:

|       | Hourly Rate | Compensable Hours | Total |
|-------|-------------|-------------------|-------|
| **Mixon** | $450 | 34.7 | $15,615 |
| **Lee**   | $400 | 50.22 | $20,088 |
|       |             |                   | **$35,703** |

Adding Mr. Mixon's fees to Ms. Lee's fees equals a total attorney's fees award of $35,703.

V.   **Conclusion**

Accordingly, Plaintiff's Motion for Default Judgment, [Doc. 66], is **GRANTED**. The Complaint's well-pled allegations and the submitted evidence

15

provide sufficient bases to find that Defendants violated the FLSA's minimum wage and overtime wage provisions.

The Court **AWARDS** Plaintiffs **$17,379.20** in compensatory damages. The Court also **AWARDS** Plaintiffs **$35,703** in attorney's fees, to be paid as specified in Section IV(B)(2), *supra*, to Plaintiff's counsel of record, J. Stephen Mixon and Jackie R. Lee. Plaintiff is **DIRECTED** to submit her bill of costs within **14 days** of this order.

**IT IS SO ORDERED** this 11th day of February, 2025.

_____
**Honorable Amy Totenberg**
**United States District Judge**